Curran, Dennis J., J.
Regency Construction has prevailed on its allegations of a chapter 93A violation against Brait Builders and its claim under G.L.c. 149, section 29 against both Brait and XL Specialty Insurance Company. We now turn to Regency’s request for attorneys fees and costs under those statutes.
I. G.L.c. 93A, sections 2 and 9 Claim
G.L.c. 93A, section 9 permits the recovery of “. . . reasonable attorneys fees and costs.”
The basic measure of reasonable attorneys fees is the fair market rate for the time reasonably spent in preparing and litigating a case. Killeen v. West Bar Hotel Venture, LP, 69 Mass.App.Ct. 784, 790 (2007), citing Stowe v. Bologna, 417 Mass. 199, 203 (1994). In doing so, we consider the factors detailed in Lithicum v. Archambault, 379 Mass. 381, 388-89 (1979).
1. Reasonable Attorneys Fee Factors A. The Nature of the Case
Although this was, at its heart, a collection case, it required technical familiarity with the construction process and the analysis of the contents of dozens of boxes of discovery documents, which culminated in 135 trial exhibits. Moreover, Brait forced Regency to defend itself against counterclaims with a claimed value that exceeded $671,000.
B. The Time and Labor Required
I have reviewed the 74 pages of itemized billing records submitted by Regency’s attorney. With just three exceptions, they are reasonable in the scope of work and the time expended for the tasks performed. They are detailed, properly descriptive and complete. They demonstrate hard work in a multi-fronted litigation battle.
However, Regency’s fee request must be reduced in three particulars: 1) in-person conferences with the client consumed 32.7 hours, when a more appropriate figure would have been about 22.6 hours; [1] 2) a billing entry of 4.0 hours on June 21, 2005 contains no description of the services provided; [2] and 3) Regency spent 7.9 hours in prosecuting its claim against the Town of Brookline (see Appendix “A” ), [3] a cause of action ultimately dismissed by summary judgment, and as such, not entitled to recompense. [4] Regency’s counsel says that a claim against the Town was necessary, in part, to obtain certain Town documents relating to the construction project, but a Rule 30(b)(6) deposition may have been just as effective.
With these three exceptions in mind, we turn to the question of whether we should honor billing records evidencing trial preparation for anticipated, but unrealized, trial dates. [5] Brait relies on Giuliano v. Piantowski, 20 Mass.L.Rptr. 17, 2005 WL 25221, for the proposition that the trial judge thought that it was “[in]appropriate” as part of a fee-shifting process to charge the losing party for multiple trial preparation. I disagree. First, there is no doubt that the time was truly expended here, the billing rate was eminently reasonable, and that trials require intense preparation, often demanding long and difficult work at night, on weekends and holidays. [6] Second, a trial attorney’s lot is not an easy one; a personal life evaporates—a reality not fully appreciated by observers. Third, this trial preparation was caused solely by Brait Builders’ intransigence in paying its honestly-incurred bills and its unfair and deceptive practices. Thus, it is hardly “appropriate” that the party whose conduct is sufficiently repugnant to qualify as a chapter 93A violation ought to escape the natural and logical consequences of such deception. Brait Builders leveraged its financial superiority to cheat many subcontractors out of their hard-earned monies; it erected roadblocks that took the form of over $671,000 in meritless counterclaims; and it could have put an end—at any time—to the need for requisite trial preparation. Instead, it *245 consciously and deliberately set upon a path to force Regency to prepare for trial on several occasions. Under the circumstances, permitting Brait to escape the full financial consequences of its strategic choice of unfair practices is not just misguided; it invites future predatory conduct in the construction trades.
C.The Hourly Rate
Regency’s counsel billed at an hourly rate of between $195 and $250, the former at the beginning of representation in 2002, and the latter five years later, in 2007. These rates are modest and reasonable.
D.Preclusion of Other Employment
This litigation was vigorously contested. There can be little doubt that Regency’s counsel was forced to forego other case work.
E.Customary Fee for the Locality
Although no documentation has been submitted as to a customary local legal fee, the issue has been addressed in another Superior Court decision. Frank v. Fowler, Middlesex Superior Court Docket No. 02-1216 (Burnes, J.) (February 23, 2007), in which a $525 hourly rate at WilmerHale was determined to be reasonable.[7] By comparison, I find that the billing rate of Attorney Charles Rancourt of between $175 (in 2002) and $250 (in 2007) to be reasonable.
F.Amount Involved and Results Obtained
Although Regency’s attorneys fees would seem to be out of proportion to the results obtained in an “offensive” civil action, they were appropriate and necessary in defending against Brait’s many counterclaims. Regency achieved a complete victory in defending against these claims.
G.Time Limitations Imposed
Regency counsel’s billing records evidence significant time expended in sifting through dozens of boxes of documents; such work required the legal fee incurred.
H.Experience, Reputation and Ability of the Attorney
Attorney Charles G. Rancourt is the consummate, accomplished and thoroughly prepared trial attorney. With forty years’ experience, he is, in a phrase, a “trial lawyer’s trial lawyer.” His practice concentrates on, among other areas, construction litigation, insurance claims and chapter 93A claims. He has, by affidavit, litigated over 100 Superior Court and federal court cases.
I have had the opportunity to assess attorney Rancourt’s trial advocacy skills. They are excellent. Moreover, his work ethic is well apparent from the work product generated in Regency’s behalf. His trial conduct, patience and professionalism were outstanding. Regency was fortunate to be represented by such an outstanding member of the trial bar.
2. Expert Witness Fees and Other Costs
To make its case, Regency was forced to retain a witness expert in the accountancy business since it needed to cut through the obfuscation of Brait’s billing practices and chargeback schemes; thus, Regency’s expense of $21,300 in engaging a certified public accountant to review voluminous records and testify at trial is both reasonable and allowed.
II. The G.L.c. 149, section 29 Claim
G.L.c. 149, Section 29 states that:
A decree in favor of any claimant under this section shall include reasonable legal fees based on the time spent and the results accomplished as approved by the court. . . (Emphasis added)
The law is “. . . remedial [in scope], to be construed broadly to effect its purpose of affording security to subcontractors and materialmen on public works.” LeBonte v. White Construction Co., 363 Mass. 41, 45 (1973). In its request, Regency asks that the Court reject the “[defendants’ argument that the award of reasonable attorneys fees must be proportioned strictly to the award obtained.” In so stating, Regency seeks to inoculate itself against the defendants’ charge that the claimed fees of almost $149,082 are not “proportional to the amount claimed or the results achieved.” (See the defendants’ opposition memorandum, p.8.) While the defendant’s observation is correct, so too is Brait Builders’ transparent strategy of asserting shotgun counterclaims that Regency owed it over $671,000 for 29 backcharges. This stratagem failed when the jury found Brait was entitled to nothing on its counterclaims. But that result did not come cheaply. To the contrary, Brait Builders, at the very first sign of discord between the parties, assumed a position that the best defense is a good offense, persisted in that attitude during the construction project, and indeed, through the eight years’ pen-dency of this lawsuit. Under the circumstances, Brait Builders cannot be heard to presently complain that the “results obtained” must be limited to Regency’s affirmative jury award; instead, it is proper to recompense Regency for its extensive defensive efforts to beat back Brait’s counterclaims and well-documented modus operandi of trying to intimidate this subcontractor — or any of the seven others reflected in the record — into dropping claims for payment. That Regency was able to call Brait’s bluff is laudable — and due, almost exclusively, to the superb advocacy and dogged tenacity of its counsel.
Thus, Brait’s present plaint that “Regency seeks an award of attorneys fees almost four and one-half times that of the principal amount recovered at trial” must fail. It was Brait that forced Regency to expend such considerable time and sums.
*246 Finally, costs are not recoverable under this statute. The legislature well knew how to permit the recovery of costs when it enacted other statutes (see for example, G.L.c. 93A, Section 9 and c.231, section 6F), but failed to so provide here.
ORDER
For the foregoing reasons, Regency’s application for attorneys fees under G.L.c. 93A against Brait Builders is ALLOWED in the sum of $144,389, general costs are ALLOWED in the sum of $11,664.69, and expert witness fees are ALLOWED in the sum of $21,300. Alternately and independently, Regency’s request for legal fees against both Brait Builders and XL Specially Insurance Company for legal fees under G.L. 149, Section 29 is ALLOWED in the sum of $144,389. No costs are awarded under this statute because it does not so authorize.
An amended judgment for the plaintiff Regency Construction shall enter reflecting this attorney fee and costs awards.

 I am not excluding the many telephone conferences between Regency’s attorney and Mr. and Mrs. Nahigian; I am factoring that 18.4 of those attorneys’ hours were expended traveling to and in Epsom, New Hampshire. A more economical use of Regency’s counsel time would have been to have conducted such conferences in his Danvers, Massachusetts office. At an hourly billing rate of between $195 and $250 (depending on the rate applicable at the time), his time was likely more valuable than the Nahigians’. That the Nahigians chose not to meet at the Danvers office cannot be fee-shifted onto Brait. Thus, Regency’s application for attorneys fees is reduced by 4 hours at $210 per hour and 6.1 hours at $235 for the dates of such travel for a total of $2,273.50.

 This computes to a reduction of $880 (4.0 hours at $220).

 The court does allow 14.2 hours expended in reviewing documents produced by the Town (see entries dated 12/12/02—5.0 hours; 4/19/02—4.2 hours; and 12/28/05— 5.0 hours).

 This computes to the disallowed sum of $1,540.50 (7.9 hours at $195 per hour).

 That these trial dates proved elusive was attributable to neither party.

 Regency's attorney expended time on Saturdays (February 4, 2006, February 6, 2006, and July 7, 2007), Sundays (October 27, 2002, January 7, 2006, February 7, 2006 and July 8, 2007) and holidays (March 17, 2003, April 19, 2004, October 10, 2005 and November 10, 2006).

 I decline to endorse such a figure, but use the WilmerHale rate to illustrate the reasonableness of Regency’s counsel billing rate.